UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRANKLIN VERAS,

                              Plaintiff,

                v.

DR. A. JACOBSON and DR. T. UDESHI,

                              Defendants.

No. 18-CV-6724 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances</u>:

Franklin Veras
Ossining, NY
*Pro se Plaintiff*

Janice Powers, Esq.
Office of the New York State Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Pro se Plaintiff Franklin Veras ("Plaintiff") brings this Action, pursuant to 42 U.S.C.

§ 1983, against Dr. Allan Jacobson ("Jacobson") and Dr. Tushar Udeshi ("Udeshi"; collectively,

"Defendants"), alleging that Defendants were deliberately indifferent to his medical needs in

violation of the Eighth Amendment.  (Am. Compl. (Dkt. No. 32).)  Plaintiff also brings

"supplemental state law claims," such as negligence and medical malpractice.  (*Id.* at 1.)

Before the Court is Defendants' Motion To Dismiss the Amended Complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6) (the "Motion").  (*See* Not. of Mot. (Dkt. No. 37).)  For

the following reasons, the Motion is granted in part and denied in part.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Amended Complaint, (Am. Compl.); an Affidavit submitted by Plaintiff seemingly to supplement his Amended Complaint, (Pl.'s Aff. in Supp. of Mot. ("Pl. Aff.") (Dkt. No. 35)); Plaintiff's Opposition to the Motion, (Pl.'s Mem. in Opp'n to Mot. ("Pl.'s Mem.") (Dkt No. 39)); and a Sur-Reply filed by Plaintiff, (Pl.'s Sur-Reply Mem. in Opp'n to Mot. ("Pl.'s Sur-Reply Mem.") (Dkt. No. 41)), and are taken as true for the purpose of resolving the instant Motion.[1]

At the time of the relevant events, Plaintiff was an inmate at Sing Sing Correctional Facility ("Sing Sing").  (Am. Compl. ¶ 1.)  On July 7, 2016, Plaintiff signed up for a sick call due to a severe toothache in his "right upper wisdom tooth that had not protruded from his gums."  (*Id.* ¶ 3; Pl.'s Mem. 5.)  Plaintiff was seen by Jacobson, who determined that Plaintiff's tooth needed to be extracted.  (Am. Compl. ¶ 3.)  Jacobson removed Plaintiff's tooth on the same day, but "no sutures were taken."  (*Id.*)  From Plaintiff's medical records, it appears that he was

---

[1] The Court properly considers factual allegations contained in Plaintiff's opposition papers and other materials submitted by Plaintiff to the extent that those allegations are consistent with the Amended Complaint.  *See Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) ("[W]here a pro se plaintiff is faced with a motion to dismiss, a court may consider materials outside the complaint to the extent that they are consistent with the allegations in the complaint." (citation, italics, and quotation marks omitted)); *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997) ("[T]he mandate to read the papers of pro se litigants generously makes it appropriate to consider [a] plaintiff's additional materials, such as his opposition memorandum." (citations and italics omitted)).

on painkillers at the time.  (*Id.* at 8 (noting "Pt[.] on ABX & NSAIDS").)[2, 3]  According to

Plaintiff, Defendants "fail[ed] to remove bone spur[s]" left after this surgery.  (Pl.'s Mem. 6.)

The bone spurs infected the "neighboring tooth," which then had to be removed.  (*Id.*)  Plaintiff

does not specify when this removal took place.  (*Id.*)

On July 8, 2016, Plaintiff again sought medical attention due to pain in his mouth.  (Am.

Compl. ¶ 5.)  He once again saw Jacobson, who "intentionally and maliciously put his finger in

Plaintiff's mouth . . . and pushed and pulled out a piece of bone causing extreme pain, bleeding,

[and] swelling, without providing anesthesia or following proper surgical procedures" while "in

the presence of V. Monroe, N.P" ("Monroe").  (*Id.*)[4]  Monroe "immediately scolded" Jacobson,

stating, "What are you doing[,] you haven't given him anesthesia or anything!"  (Pl.'s Mem. 7

(quotation marks omitted).)

---

[2] Plaintiff attached his medical records to the Amended Complaint, and as such, the Court
properly considers the records in connection with the pending Motion.  *See Blue Tree Hotels Inv.
(Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004)
(permitting consideration of "any documents that are either incorporated into the complaint by
reference or attached to the complaint as exhibits" (citations omitted)).  Although the Court
normally accepts the allegations in a complaint as true at the motion to dismiss stage, this rule
does not apply where a document attached to the complaint contradicts the plaintiff's allegations.
*See James v. Gage*, No. 15-CV-106, 2018 WL 2694436, at *1 n.2 (S.D.N.Y. June 5, 2018)
(stating the same); *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002)
(same); *see also MBIA Inc. v. Certain Underwriters at Lloyd's*, 33 F. Supp. 3d 344, 353
(S.D.N.Y. 2014) ("Allegations in the complaint that are 'contradicted by more specific
allegations or documentary evidence' are not entitled to a presumption of truthfulness." (quoting
*Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 175 n.1 (2d Cir. 2013)).

[3] The pages of Plaintiff's Amended Complaint are inconsistently numbered.  Thus, the
Court refers either to the paragraph numbers or the ECF-stamped page numbers at the top of
each page.

[4] In his Amended Complaint, Plaintiff alleges that this procedure took place on July 8,
2019.  (Am. Compl. ¶ 5.)  However, given that Plaintiff's Amended Complaint is otherwise
chronologically ordered, this appears to be a typographical error, and the Court assumes that
these events took place on July 8, 2016.

Three days later, "unable to deal with the pain," Plaintiff returned to see Jacobson, who "discovered that a chipped bone was protruding from Plaintiff's open cavity."  (Am. Compl. ¶ 7.) As such, Plaintiff was scheduled to see Udeshi, an oral surgeon, to have the chipped bone removed.  (*Id.*)  Udeshi performed the surgery "on the same date."  (*Id.*)  According to Plaintiff, his "jaw (mandible)" was broken by Udeshi during this surgery, and he was not treated for the fracture "within three to four days."  (Pl.'s Sur-Reply Mem. 3–4.)  Plaintiff alleges that failure to treat such a fracture within three to four days may result in "heal[ing] with the bone in the wrong position, which will result in a sever[e] malocclusion, i.e.[,] an inability for the teeth to touch one side of the mouth when the jaws are in a closed position."  (*Id.* (quotation marks omitted) (quoting *Marino v. Koenigsmann*, No. 12-CV-1170, 2016 WL 1298726, at *18 (N.D.N.Y. Mar. 31, 2016)).)

During the following weeks, Plaintiff continued to seek dental care for various reasons. On July 13, 2016, Plaintiff went back to "[D]ental due to pain", but "was not seen by Jacobson." (Am. Compl. ¶ 8.)  Plaintiff appears to have seen Udeshi on this date, who wrote that Plaintiff "refused to allow [Udeshi] to evaluate [the] extraction site," and that Plaintiff "elect[ed] to see . . . Jacobson for [follow] up."  (*Id.* at 8.)

On July 18, 2016, Plaintiff returned to "Dental" due to "pain and swelling."  (*Id.* at 3.) Jacobson noted that Plaintiff's "surg[ical] site [was] healing slowly."  (*Id.* ¶ 9.)  It also appears that Plaintiff was prescribed or taking Motrin at the time.  (*Id.* at 8.)  On July 21, 2016, Plaintiff again returned to "Dental" due to "pain and [a] piece of bone protruding from area #1."  (*Id.* ¶ 10.)  On the same day, Jacobson noted that there was a "small bone" present in the area, and that it was not possible to "gain access to reduce [it]," but that there was the "possibility of natural reduction."  (*Id.* at 9.)  Jacobson also wrote that Plaintiff "ha[d] adequate pain

4

med[ication]" and that he was "healing nicely." (*Id.*) Approximately one week later, on August

1, 2016, Plaintiff sought dental care for "pain, swelling, sinus problems[,] and

tenderness/sensitivity." (*Id.* ¶ 11.) Plaintiff was sent to an "outside hospital" on the following

day for these symptoms. (*Id.* ¶ 12.)[5] According to Plaintiff, his dental records were "falsified,"

as they stated that on August 3, 2016, Plaintiff was sent to "[an] outside hospital (Westchester

Medical) due to pain, facial swelling[,] and sinus problems." (*Id.* ¶ 13.) On August 9, 2016,

Plaintiff returned to "Dental" due to "pain in area #1, tenderness/sensitivity, and bone spur[s]."

(*Id.* ¶ 14.) Plaintiff's medical records again note that he was taking Motrin, and that Plaintiff was

"awaiting [a] radiology report." (*Id.* at 9.) Plaintiff also appears to have been given a "no

class/no work pass" on this date. (*Id.*) Plaintiff returned to the dental clinic on August 15, 2016

due to "extreme pain in area #1, swelling, and problem[s] eating," where he was seen by

Monroe. (*Id.* ¶ 15.) According to Plaintiff's medical records, Plaintiff "refuse[d] to see Dr.

Udeshi" during this visit, and Plaintiff's "medical provider[, Monroe,] . . . request[ed] [a] CT

scan covering area #1." (*Id.* at 10.)[6] During another trip to "Dental" on August 19, 2016 due to

"extreme pain," Plaintiff learned from Jacobson that "bone spurs were present in area #1." (*Id.*

---

[5] In his Amended Complaint, Plaintiff alleges that he was sent to the hospital on August 2, 2019. (Am. Compl. ¶ 12.) However, given the fact that Plaintiff's Amended Complaint is otherwise chronologically ordered, this appears to be a typographical error, and the Court assumes that this event took place on August 2, 2016.

[6] Plaintiff appears to have received a CT scan in early September 2016. Plaintiff's medical records from between September 7 and September 9, 2016 note, "[negative] study, [negative] pathology, clinical exam . . . possible bone spurs . . . see prior entries." (Am. Compl. 11.)

¶ 16.)  On August 25, 2016, Plaintiff returned to "Dental" due to "pain," and was again sent to an "outside hospital" on August 29, 2016.  (*Id.* ¶¶ 17–18.)[7]

Plaintiff's symptoms continued into September.  On September 9, 2016, he returned to "Dental" due to "pain in area #1," and on September 13, 2016, he underwent a "[d]ental procedure/surgery."  (*Id.* ¶¶ 19–20.)  Plaintiff returned to "Dental" on September 16, 2016 due to "pain in area #1" and "request[ed] a cleaning" on September 20, 2016.  (*Id.* ¶¶ 21–22.)  Plaintiff appears to have been prescribed pain medication, such as amoxicillin, on both September 9 and September 16, 2016, and was again given "no ASAT/no work" passes.  (*Id.* at 11.)  Although Plaintiff does not allege that any visits took place on September 20, 2016, his records note that on this date, his mouth had "healed nicely," Plaintiff suffered "no pain," and that Plaintiff requested a cleaning, for which he was "on [a] list."  (*Id.* at 12.)

Plaintiff returned to "Dental" approximately one month later, on October 25, 2016, due to "extreme pain and bone spur[s] in area #2."  (*Id.* ¶ 23.)  Plaintiff "request[ed] pain med[ication]s and was given Motrin.  (*Id.* at 12.)  On the same day, Plaintiff "signed up for sick call," and was "told that more bone chips were protruding from the tooth cavity," which would require an additional surgery.  (*Id.* ¶ 24.)  Plaintiff underwent this surgery on December 13, 2016.  (*Id.* ¶ 25.)  According to Plaintiff, his previous surgeries were unsuccessful, and he continued to suffer pain due to "Udeshi and Jacobson leaving more pieces of chipped bones in the tooth cavity from which the initial tooth was extracted."  (*Id.* ¶ 26.)  As such, Plaintiff needed a "third surgery."  (*Id.*)  It is noted in Plaintiff's medical records from December 19, 2016, that Plaintiff

---

[7] According to Plaintiff, his medical records do not reflect this trip, but he has a hospital identification wrist band demonstrating that he was taken to the hospital on this date.  (Am. Compl. ¶ 18.)

experienced "excellent healing" from the surgery, and that he was "happy with Dr. Moore performing oral surgery on him." (*Id.* at 12.)

Plaintiff sought additional sick call on January 24, 2017 due to "extreme pain, loss of sleep, trouble eating[,] and headaches." (*Id.* ¶ 27.)  Plaintiff appears to have been prescribed Motrin and Augmentin during this appointment. (*Id.* at 13.)  The following year, beginning on January 12, 2018, Plaintiff returned to "Dental" due to "extreme pain and more bone spur[s] left from previous surgeries." (*Id.* ¶ 28.)  Plaintiff's medical records note that he requested pain medication and was "currently on Relaphen," which was prescribed by Monroe. (*Id.* at 14.)  On January 29, 2018, Plaintiff again returned to "Dental" due to "extreme pain and loss of sleep," and was sent to the Mount Vernon Hospital ("Mount Vernon") for a surgical procedure. (*Id.* ¶ 29.)  Plaintiff stayed in the infirmary at Mount Vernon until February 1, 2018. (*Id.*)  He was prescribed Motrin at this time. (*Id.* at 14.)  On February 20, 2018, Plaintiff underwent another "[d]ental procedure/surgery," and returned to "Dental" eight days later due to "extreme pain, swelling[,] and a feeling of hardness between area[s] #2 and #3." (*Id.* ¶¶ 30–31.)  The area was flossed and evaluated, and Plaintiff's records note that there were "no findings at th[at] time." (*Id.* at 15.)  Almost three months later, on May 9, 2018, Plaintiff returned to "Dental" due to "extreme pain in area #2 and bone spur[s]." (*Id.* ¶ 32.)  A "consult" with Moore was scheduled at that time, and Plaintiff underwent another surgical procedure on June 12, 2018. (*Id.* ¶ 33; *id.* at 15.)  Approximately two weeks later, Plaintiff returned to "Dental" due to "extreme pain and loss of sleep," and Udeshi "ordered the construction of a mouth piece to reduce the pain and allow . . . Plaintiff to sleep." (*Id.* ¶ 34.)  On September 18, 2018, Plaintiff again returned, complaining of "extreme pain, loss of sleep, discomfort[,] and more problems eating." (*Id.* ¶ 35.)  On October 2, 2018, Plaintiff underwent another oral surgery. (*Id.* ¶ 36.)

7

Plaintiff alleges that the numerous surgeries he underwent were "attempt[s] to rectify each previous injury from their respective surgeries," which included (1) removal of "bone spur[s] . . . left from the July 7, 2016 surgery"; (2) "repair [of Plaintiff's] broken jaw from a surgery"; (3) removal of a tooth; (4) "attempts to alleviate pain [and] swelling," including his inability to eat on the right side of his mouth; and (5) "any other unknown injuries that cannot be deciphered due to Plaintiff's medical records being illegible." (*Id.* ¶ 37.)[8]

Plaintiff further alleges that Defendants "intentionally and maliciously failed to take oral X-rays . . . to determine if any chipped bone/teeth were in still in [the] cavity aggravating prior injuries and causing new injuries" before and after his surgical procedures. (*Id.* ¶ 41; Pl.'s Mem. 6.) Further, although medical staff prescribed Plaintiff painkillers "on a consistent basis," Plaintiff continued to experience "extreme pain," and the staff did not prescribe stronger pain medication to Plaintiff. (Am. Compl. ¶ 6.) Plaintiff alleges that although his "only initial symptom" was pain from his wisdom tooth, (Pl.'s Mem. 8), as a result of the course of his treatment, and Defendants' "malpractice, delay[,] and treatment," Plaintiff still needs treatment today, and suffers from "serious permanent physical, mental, and emotional injury," (Am. Compl. ¶¶ 39, 46). Specifically, Plaintiff has lost one to two teeth and endured over four years of "excessive/extreme mouth pain, headaches, [and an inability] to do normal and basic activities . . . [such as] eating [without] pain, . . . [and] hav[ing] a pain-free conversation." (*Id.* ¶ 40; Pl.'s Mem. 5.) Plaintiff is only able to eat on the left side of his mouth and also suffers from

---

[8] According to Plaintiff, his surgeries took place on July 11, 2016; September 13, 2016; December 13, 2016; February 20, 2018; June 12, 2018; and October 2, 2018. (Am. Compl. ¶ 37.) Based on the medical records attached to the Amended Complaint, the September, December, February, June, and October surgeries appear to have been performed by Dr. Marlon K. Moore ("Moore"), who is not a Defendant in this case. (*Id.* at 11–12, 14–16.) Udeshi appears to have performed the July 11, 2016 surgery. (*Id.* at 8.)

headaches and a "swollen face."  (Am. Compl. 5.)  Further, according to Plaintiff, Jacobson has

"a history of excessive grievances and complaints filed against him" due to injuries he has

caused while providing dental care.  (*Id.* ¶ 42 (collecting cases).)  Plaintiff seeks $500,000 in

compensatory damages and $1,000,000 in punitive damages.  (*Id.* at 6.)  He also asks that his

dental records "be legible and accurately written," or that they be typed.  (*Id.*)

### B.  Procedural Background

Because the procedural background of this Action has been summarized in the Court's

previous Opinion & Order on Defendants' Motion To Dismiss the Complaint (the "2019

Opinion"), the Court supplements the procedural history of the case since the issuance of the

2019 Opinion.  (*See* Op. & Order ("2019 Op.") (Dkt. No. 27).)

On July 18, 2019, the Court issued the 2019 Opinion, which dismissed Plaintiff's claims

without prejudice and allowed Plaintiff 30 days to file an amended complaint.  (*Id.* at 10.)  After

receiving an extension from the Court, (Dkt. No. 31), Plaintiff filed the Amended Complaint on

September 13, 2019.  (Am. Compl.)  Pursuant to a briefing schedule set by the Court, (Dkt. No.

36), Defendants filed the instant Motion on October 21, 2019, (Not. of Mot.; Defs.' Mem. of

Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 37)).  Plaintiff filed his Response on October

31, 2019.  (Pl.'s Mem.)  Defendants filed a Reply on December 5, 2019, (Defs.' Reply Mem. of

Law in Supp. of Mot. ("Defs.' Reply Mem.") (Dkt. No. 40)), and Plaintiff filed a Sur-Reply on

December 17, 2019, (Pl.'s Sur-Reply Mem.).

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

     In considering Defendants' Motion, the Court is required to "accept as true all of the factual allegations contained in the [Amended Complaint]." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same).  And, the

Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted). However, when the plaintiff is pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah*, 2013 WL 3972514, at *4 n.3 (citation and quotation marks omitted), including, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), and "documents that the plaintiff[ ] either possessed or knew about and upon which [he or she] relied in bringing the suit," *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (citation omitted).

B.  Analysis

1.  Applicable Law

"The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners.'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013)

(quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  To state a deliberate indifference claim,

Plaintiff must plausibly allege (1) "that he suffered a sufficiently serious constitutional

deprivation," and (2) that Defendants "acted with deliberate indifference."  *Feliciano v.*

*Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *8 (S.D.N.Y. Mar. 30, 2017) (citation

omitted).

"The first requirement is objective: the alleged deprivation of adequate medical care must be

sufficiently serious."  *Spavone*, 719 F.3d at 138 (citation and quotation marks omitted).  In other

words, "the inmate must show that the conditions, either alone or in combination, pose an

unreasonable risk of serious damage to his health."  *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir.

2013) (citations omitted).  Analyzing this objective requirement involves two inquiries: "whether

the prisoner was actually deprived of adequate medical care," *Salahuddin v. Goord*, 467 F.3d

263, 279 (2d Cir. 2006), and "whether the inadequacy in medical care is sufficiently serious,"

which in turn "requires the [C]ourt to examine how the offending conduct is inadequate and what

harm, if any, the inadequacy has caused or will likely cause the prisoner," *id.* at 280 (citation

omitted).  "There is no settled, precise metric to guide a court in its estimation of the seriousness

of a prisoner's medical condition."  *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003).

Nevertheless, the Second Circuit has suggested the following non-exhaustive list of factors to

consider when evaluating an inmate's medical condition: "(1) whether a reasonable doctor or

patient would perceive the medical need in question as 'important and worthy of comment or

treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the

existence of chronic and substantial pain.'"  *Id.* (quoting *Chance v. Armstrong*, 143 F.3d 698,

702 (2d Cir. 1998)).  "When the basis for a prisoner's Eighth Amendment claim is a temporary

delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate

to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious, to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (emphasis in original) (citation and quotation marks omitted).

"The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138 (citation omitted). This means that the defendant must "appreciate the risk to which a prisoner was subjected," and have a "subjective awareness of the harmfulness associated with those conditions." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017); *see also Nielsen*, 746 F.3d at 63 ("Deliberate indifference is a mental state equivalent to subjective recklessness," and it "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." (citation, footnote, and quotation marks omitted)). In other words, "[i]n medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Nielsen*, 746 F.3d at 63 (citation and quotation marks omitted). However, "mere negligence" is insufficient to state a claim for deliberate indifference. *Walker*, 717 F.3d at 125 (quotation marks omitted). Moreover, "mere disagreement over the proper treatment does not create a constitutional claim," and accordingly, "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703 (citation omitted).

2.  Application to Plaintiff's Claims

a.  Objective Prong

Defendants argue that Plaintiff fails to meet the objective component under the Eighth

Amendment because "[f]requent care in response to complaints of persistent pain following a

tooth extraction does not equate to a constitutional violation," and a "toothache does not qualify

as a 'serious medical need.'"  (Defs.' Mem. 8–10 (citations and some quotation marks omitted).)

A sufficiently serious condition is "a condition of urgency that may result in degeneration or

extreme pain."  *Chance*, 143 F.3d at 702 (citation and quotation marks omitted).  The Second

Circuit has held that "[d]ental conditions, like other medical conditions, may be of varying

severity," and that "[a] cognizable claim regarding inadequate dental care, like one involving

medical care, can be based on various factors, such as the pain suffered by the plaintiff."  *Id.* at

702–03 (citation omitted).  Even though "[p]risoners are not entitled to a 'perfect plan for dental

care,'" *Alster v. Goord*, 745 F. Supp. 2d 317, 333 (S.D.N.Y. 2010) (quoting *Dean v. Coughlin*,

804 F.2d 207, 215 (2d Cir. 1986)), dental conditions that cause extreme pain or an inability to

engage in daily activities, such as eating, may qualify as serous medical conditions, *see Harrison

v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000); *see also Brown v. Mewar*, No. 07-CV-551, 2011

WL 573566, at *15 (W.D.N.Y. Feb. 14, 2011) (finding that a dental condition that "present[ed]

medical urgency that might produce not death, but degeneration or extreme pain, including an

inability to eat . . . constituted a sufficiently serious condition as defined under the Eighth

Amendment" (citation omitted)), *adopted by* 2011 WL 891403 (W.D.N.Y. Mar. 9, 2011); *Rashid

v. McGraw*, No. 01-CV-10996, 2006 WL 1378945, at *7 (S.D.N.Y. May 18, 2006) (noting that

claims of inadequate dental care "can be based on various factors, such as the pain suffered by

the plaintiff, the deterioration of the teeth due to a lack of treatment, or the inability to engage in normal activities" (citation and quotation marks omitted)).

Even assuming that Plaintiff was regularly seen by Defendants, he does allege that his "condition . . . significantly affect[ed] [his] daily activities," and caused "the existence of chronic and substantial pain." *Chance*, 143 F.3d at 702 (citation and quotation marks omitted). For example, Plaintiff claims that he suffers from "excessive/extreme mouth pain, headaches, [and an inability] to do normal and basic activities . . . [such as] eating [without] pain, [and] hav[ing] a pain-free conversation." (Am. Compl. ¶ 40; Pl.'s Mem. 5.) Plaintiff is only able to eat on the left side of his mouth and also suffers from a "swollen face." (Am. Compl. ¶ 40; *id.* at 5.) Thus, even though Plaintiff also alleges that he received various forms of treatment from Defendants, drawing all reasonable inferences in Plaintiff's favor, Plaintiff has adequately alleged that his dental pain constituted a sufficiently serious condition as defined under the Eighth Amendment. *See Gaffney v. Perelmuter*, No. 16-CV-1392, 2018 WL 4688297, at *6 (D. Conn. Sept. 28, 2018) (finding that the plaintiff's complaints of chronic pain in his tooth, even after it had been filled twice, could suggest that the plaintiff "suffered from a dental condition that was painful and worthy of comment and treatment, and as such constituted a serious dental need" (citations omitted)), *aff'd in part, vacated on other grounds in part*, 805 F. App'x 53 (2d Cir. 2020); *Dean v. Coughlin*, 623 F. Supp. 392, 404 (S.D.N.Y. 1985) (holding that "dental needs" accompanied by, inter alia, pain, discomfort, and "serious health consequences" constitute "serious medical needs as the law defines that term").

### b. Subjective Prong

Defendants argue that Plaintiff has not alleged that either Defendant acted with deliberate indifference, as Plaintiff was regularly seen and treated for his ailments. (Defs.' Mem. 10–11.)

i.  Defendant Udeshi

The Court agrees that Plaintiff fails to sufficiently allege that Udeshi was "subjectively reckless in [his] denial of medical care." *Spavone*, 719 F.3d at 138 (citation omitted).  "The case law . . . draws a clear distinction between situations in which the physician provides *no* medical care, which may amount to deliberate indifference, and those in which the physician provides merely *substandard* care, which amounts at most to negligence."  *Skyers v. United States*, No. 12-CV-3432, 2013 WL 3340292, at *10 (S.D.N.Y. July 2, 2013) (emphasis added) (citation and quotation marks omitted).  Here, even liberally construed, Plaintiff's allegations do not establish that Udeshi denied him medical treatment.  On the contrary, Plaintiff was regularly seen when he complained of pain, and received numerous treatments over the course of more than two years, including surgical intervention performed by Udeshi, a mouthpiece to alleviate his pain ordered by Udeshi, prescriptions for painkillers, and referral to Mount Vernon.  (*See generally* Am. Compl.)  *See Norman v. Mount Vernon Hosp.*, No. 17-CV-9174, 2020 WL 4432063, at *8 (S.D.N.Y. July 31, 2020) (stating that "immediate referral to an outside hospital for treatment does not demonstrate that [the defendant] was deliberately indifferent to a substantial risk of harm" (record citation, alterations, and quotation marks omitted) (collecting cases)); *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *7 (S.D.N.Y. Mar. 29, 2016) (holding that "treatment of a prisoner's medical condition generally defeats a claim of deliberate indifference" (citation and quotation marks omitted)); *Pabon v. Wright*, No. 99-CV-2196, 2004 WL 628784, at *7 (S.D.N.Y. Mar. 29, 2004) (dismissing deliberate indifference claim because "[i]t is undisputed that [the] defendants examined [the] plaintiffs numerous times over several years, administered diagnostic tests, and prescribed medications to treat [the] plaintiffs' [illness]"), *aff'd*, 459 F.3d 241 (2d Cir. 2006).  As this Court previously found, "[t]he fact that

16

Defendants' interventions were ultimately unsuccessful can, at most, state a claim for negligence or medical malpractice, but is insufficient to meet the Eighth Amendment standard." (2019 Op. 8 (collecting cases).)

Plaintiff's main allegation with respect to Udeshi is that Plaintiff's "jaw (mandible)" was broken when Udeshi performed surgery on him, and that Plaintiff was not treated for the fracture "within three to four days," which he alleges may result in "a sever[e] malocclusion, i.e.[,] an inability for the teeth to touch one side of the mouth when the jaws are in a closed position." (Pl.'s Sur-Reply Mem. 3–4 (citation and quotation marks omitted).) However, the Amended Complaint is devoid of any allegations or facts that suggest that Udeshi acted with deliberate indifference during this surgery. (*See* Am. Compl. ¶ 37 (stating only that Plaintiff underwent a later surgery "to repair the broken jaw from a surgery"); Pl.'s Sur-Reply Mem. 3 (claiming that his jaw was broken during "the first oral surgery performed by . . . Udeshi").) Even if Udeshi caused Plaintiff's broken jaw during surgery, "unintended harm" or "negligence [are] not actionable under [§] 1983." *Hawthorne v. Nurse Sturgeon*, No. 17-CV-438, 2018 WL 4290458, at *4 (N.D.N.Y. Aug. 8, 2018) (collecting cases), *adopted by* 2018 WL 4288624 (N.D.N.Y. Sept. 7, 2018). Moreover, even if Udeshi failed to properly perform the surgery, without more, Plaintiff's allegations amount only to medical malpractice, which "does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Collazo-Portillo v. D'Avirro*, No. 06-CV-2028, 2007 WL 1614527, at *2 (D. Conn. May 29, 2007) (finding that the plaintiff's allegations of unsuccessful eye surgeries, "[a]bsent claims of deliberate indifference to [the] plaintiff's medical needs," "constitut[ed] claims of negligence or medical malpractice").

Similarly, with respect to the delay in the treatment of his fracture, Plaintiff "alleges no facts plausibly suggesting that [Udeshi, or any other medical provider,] intentionally or knowingly delayed [the treatment of Plaintiff's jaw], let alone delayed the [treatment] having learned of the complication[] arising out of the . . . surgery." *Ward v. Capra*, No. 16-CV-6533, 2019 WL 1922290, at *5 (S.D.N.Y. Apr. 30, 2019) (noting that the plaintiff did not, for example, allege that he complained to the doctor about surgical complications directly, or that the doctor became aware of the complications and chose not to promptly act); *see also Hanner v. Westchester County*, No. 16-CV-7610, 2019 WL 1299462, at *6 (S.D.N.Y. Mar. 21, 2019) (dismissing deliberate indifference claim where the "plaintiff fail[ed] to make any non-conclusory allegations suggesting any defendant acted with deliberate indifference in causing the delay" (footnote omitted)); *Bennett v. Care Correction Sol. Med. Contracter*, No. 15-CV-3746, 2017 WL 1167325, at *8 (S.D.N.Y. Mar. 24, 2017) (dismissing deliberate indifference claim based on a three-month delay in surgery where the plaintiff had not "alleged any conduct or behavior that would suggest the delay was caused by [the] [d]efendants' deliberate indifference" (citation omitted)), *appeal dismissed*, 2018 WL 1756123 (2d Cir. 2018); *Bell*, 980 F. Supp. 2d at 562 (collecting cases for the proposition that courts dismiss deliberate indifference claims in which inmates "merely allege a delay in the provision of medication or treatment, but fail to allege that the delay was either intentional or reckless"); *Myrie v. Calvo*, 615 F. Supp. 2d 246, 248 (S.D.N.Y. 2009) ("[D]enying or delaying needed treatment for a serious medical condition constitutes deliberate indifference for Eighth Amendment purposes only if [the] official[] delayed care as a form of punishment, ignored a life-threatening and fast-degenerating condition for several days, or delayed major surgery." (citation omitted)); *Pabon*, 2004 WL 628784, at *8 ("[A] delay in treatment does not violate the [C]onstitution unless it involves an act or failure to

act that evinces a conscious disregard of a substantial risk of serious harm." (first alteration in

original) (citation and quotation marks omitted)), *aff'd* 459 F.3d 241 (2d Cir. 2006).  Indeed,

Plaintiff alleges no facts at all going to Udeshi's mental state or awareness of Plaintiff's

condition following this surgery.  Thus, without more, these allegations are insufficient to state a

claim against Udeshi under the Eighth Amendment.

Relatedly, although Plaintiff generally alleges "delays" in medical care throughout his

Amended Complaint, Plaintiff's allegations, and the appended medical records, establish that he

was "repeatedly seen in the dental clinic and provided with [treatment and] medication

(although, not, perhaps, on each occasion, with the precise relief he sought)."  *Glover v.*

*Greenman*, No. 11-CV-9122, 2013 WL 1294698, at *6 (S.D.N.Y. Apr. 1, 2013).  Moreover,

Plaintiff does not allege any facts to suggest that the longer gaps in his treatment were

intentionally caused by either Defendant, or that he sought and was refused medical care during

that time.  (*See generally* Am. Compl.)  Finally, although Plaintiff alleges in his Amended

Complaint that Udeshi acted "intentional[ly] and malicious[ly]," (*see id.* at 1, ¶ 41), these

statements are conclusory, as Plaintiff does not plead facts that support this alleged state of mind.

*See Melvin*, 2016 WL 1254394, at *8 (finding that the court "need not accept [the] [p]laintiff's

legal conclusions as to [the] [d]efendants' states of mind" (collecting cases)).

Finally, although deliberate indifference may be found where the "course of treatment

was largely ineffective and [the defendant] declined to do anything more to attempt to improve

[the plaintiff's] situation," *Hathaway v. Coughlin*, 37 F.3d 63, 68 (2d Cir. 1994), Plaintiff does

not allege that Defendants ever declined to improve his situation or refused to perform a

treatment that was clearly necessary.  *See Abney v. McGinnis*, No. 01-CV-8444, 2007 WL

844675, at *3 (S.D.N.Y. Mar. 16, 2007) ("In cases where ineffective care has constituted

deliberate indifference, defendants had failed to recommend or carry out a course of treatment that was plainly required." (collecting cases)).  Indeed, "'inadvertent failure to provide adequate medical care' or claims that prison medical staff were 'negligent in diagnosing or treating a medical condition' do not amount to deliberate indifference."  *Wise v. Daugherty*, No. 13-CV-6417, 2015 WL 4162819, at \*5 (W.D.N.Y. July 9, 2015) (quoting *Atkins v. Coughlin*, 101 F.3d 1393 (2d Cir. 1996)).  Instead, Plaintiff alleges that Defendants regularly examined him, provided him with painkillers and other forms of treatment to alleviate his symptoms, and repeatedly performed surgery "in an ongoing attempt to relieve [his] suffering."  (2019 Op. 9.)  To the extent Plaintiff alleges that Defendants failed to take oral X-rays, (Am. Compl. ¶ 41), "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim," *Chance*, 143 F.3d at 703, and "[a] medical decision not to order an X-ray . . . does not represent cruel and unusual punishment.  At most, it is medical malpractice . . . . ," *Estelle*, 429 U.S. at 107 (footnote omitted) (noting that the respondent failed to state a claim for deliberate indifference when he was "seen by medical personnel on 17 occasions spanning a [three]-month period," and received treatment such as bed rest, muscle relaxants, and pain relievers).  *See also Jones v. Vives*, 523 F. App'x 48, 50 (2d Cir. 2013) (same, when the plaintiff alleged that a doctor prescribed Motrin to relieve his pain but did not initially order an X-ray of his hand); *Hill v. Jones*, No. 19-CV-826, 2019 WL 4305408, at \*3 (N.D.N.Y. Sept. 11, 2019) ("[The] [d]efendants' unwillingness to order x-rays . . . does not create an Eighth Amendment claim." (citation omitted)), *reconsideration denied*, 2019 WL 5425085 (N.D.N.Y. Oct. 23, 2019); *Whitley v. Ort*, No. 17-CV-3652, 2018 WL 4684144, at \*8 (S.D.N.Y. Sept. 28, 2018) ("[D]isagreements over . . . the need for X-rays[] . . . are not adequate grounds for a § 1983 claim" (citations, alteration, and quotation marks omitted)); *Echevarria v. Canfield*, No.

12-CV-129, 2014 WL 174109, at *4 (W.D.N.Y. Jan. 13, 2014) (reasoning that the refusal to

order an MRI of the plaintiff's back, without more, did not amount to deliberate indifference).

Any allegation that Defendants failed to prescribe stronger pain medication also fails, as it is well

established that "[d]isagreements over medications . . . implicate medical judgments and not the

Eighth Amendment." *Wright v. Genovese*, 694 F. Supp. 2d 137, 155 (N.D.N.Y. Mar. 9, 2010)

(citation omitted), *aff'd*, 415 F. App'x 313 (2d Cir. 2011); *see also Hill v. Curcione*, 657 F.3d

116, 123 (2d Cir. 2011) (affirming dismissal where an inmate was prescribed Motrin for his

nerve condition but sought stronger pain medication and a "nerve conduction study"); *Harris v.

Westchester Cty. Med. Ctr.*, No. 08-CV-1128, 2011 WL 2637429, at *3 (S.D.N.Y. July 6, 2011)

("The failure to provide stronger pain medication does not constitute deliberate indifference."

(citations omitted)); *Salvatierra v. Connolly*, No. 09-CV-3722, 2010 WL 5480756, at *19

(S.D.N.Y. Sept. 1, 2010) (explaining that "[c]ourts in th[e] [Second] Circuit have consistently

held that . . . allegations [that a defendant failed to prescribe strong enough painkillers] are

insufficient to state a claim for deliberate indifference" (collecting cases)), *adopted by* 2011 WL

9398 (S.D.N.Y. Jan. 3, 2011); *Veloz v. New York*, 339 F. Supp. 2d 505, 525 (S.D.N.Y. 2004)

(medical providers' decision to prescribe Tylenol rather than stronger pain medication for a

prisoner's back condition did not state a claim for deliberate indifference), *aff'd*, 178 F. App'x 39

(2d Cir. 2006). Conversely, "[t]hese are precisely the sorts of issues that implicate medical

judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth

Amendment." *Whitley*, 2018 WL 4684144, at *8 (citation, alteration, and quotation marks

omitted).

ii.  Defendant Jacobson

Although the majority of Plaintiff's claims related to Jacobson suffer from the same deficiencies identified above, Plaintiff does allege that on July 8, 2016, when Plaintiff sought medical care for his pain, Jacobson "intentionally and maliciously put his finger in Plaintiff's mouth . . . and pushed and pulled out a piece of bone causing extreme pain, bleeding, [and] swelling without providing anesthesia or following proper surgical procedures" while "in the presence of" Monroe, who "immediately scolded" Jacobson and stated, "What are you doing[,] you haven't given him anesthesia or anything!"  (Am. Compl. ¶ 5; Pl.'s Mem. 7.)  Defendants do not address this allegation in their memoranda, noting only that there is not an entry in Plaintiff's medical records for July 8, 2016.  (Defs.' Mem. 1.)

"[A] plaintiff may be able to state an Eighth Amendment claim where a doctor acts without medical justification . . . ."  *McKenna v. Wright*, No. 01-CV-6571, 2002 WL 338375, at *8 (S.D.N.Y. Mar. 4, 2002) (citation omitted).  Here, construing the Amended Complaint liberally, the alleged facts surrounding this incident support Plaintiff's claim that Jacobson acted "intentionally and maliciously."  (Am. Compl. ¶ 5.)  First, Plaintiff alleges that he experienced "extreme pain, bleeding, [and] swelling" upon Jacobson's removal of the piece of bone, which presumably Jacobson would have been able to observe.  (*Id.*)  Second, Monroe allegedly "immediately scolded" Jacobson for failing to "follow[] proper surgical procedures."  (Pl.'s Mem. 7.)  Although "disagreements among treating medical professionals do not create an inference of deliberate indifference," *Allah v. Switz*, No. 14-CV-5970, 2017 WL 519269, at *7 (S.D.N.Y. Feb. 8, 2017) (collecting cases), Monroe's alleged exclamation suggests that she may not have merely disagreed with Jacobson, but may have been "shock[ed] at [Jacobson's] failure to" administer anesthesia for the procedure, *Hemmings v. Gorczyk*, 134 F.3d 104, 109 (2d Cir.

1998) (finding that the plaintiff "advanced a colorable claim that the defendants willfully disregarded his condition, which was easily observable" and about which a "specialist . . . expressed shock at the . . . failure to . . . treat the injury" (footnote omitted)); *see also Gaffney v. Perelmuter*, 805 F. App'x 53, 57–58 (2d Cir. 2020) (determining that a reasonable jury could infer that a dentist acted recklessly when he ignored the plaintiff's cries of pain and continued to extract a tooth without additional pain relief and without waiting for the Novocain to take effect).[9]

Thus, at this early stage, the Court will not dismiss Plaintiff's claims against Jacobson as they relate to the events of July 8, 2016.  However, any other claims Plaintiff intends to bring against Jacobson related to other incidents are dismissed because, as explained above, the remainder of Plaintiff's claims "suggest[] only that Defendants acted, or failed to act, with 'negligence amounting to medical malpractice,' which is 'insufficient to state a claim of deliberate indifference.'"  (2019 Op. 9–10 (quoting *Whitley*, 2018 WL 4684144, at *8).)

### III.  Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted in part and denied in part.  Plaintiff's claims against Jacobson with respect to the procedure on July 8, 2016 survive the instant Motion.  Plaintiff's claims against Udeshi, and any other claims against Jacobson, are dismissed with prejudice.[10]

---

[9] Although Defendants rely on the fact that Plaintiff's medical records do not include an entry for July 8, 2016, (Defs.' Mem. 1), this fact is not dispositive, particularly when Plaintiff has alleged that portions of his medical records omitted certain events or were falsified.

[10] These claims are dismissed with prejudice as Plaintiff has already had a second bite at the apple with his Amended Complaint.  *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *Melvin*, 2016 WL 1254394, at *24 n.19 (granting motion to dismiss with prejudice where "[the] [p]laintiff has already had two bites at the apple, and they have proven fruitless" (citation, alterations, and quotation marks

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 37), and mail a copy of this Opinion to Plaintiff at the address listed on the docket.  The Court will hold an initial conference via teleconference to set a schedule for discovery on October 27, 2020 at 10:30 a.m.

SO ORDERED.

DATED:          September 23, 2020
                White Plains, New York

 

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

omitted)); *Anthony v. Brockway*, No. 15-CV-451, 2015 WL 5773402, at *3 (N.D.N.Y. Sept. 30, 2015) (dismissing amended complaint with prejudice where the "[p]laintiff has already been given one opportunity to amend his complaint . . . , and there is nothing in his second amended complaint suggesting that [he] could do better given another opportunity").